Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Diana Suttles

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DIANA SUTTLES<br><br>Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.; TransUnion, LLC; T.D. Bank, N.A.<br><br>Defendants. | CASE NO.   2:23-cv-01221<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act<br>2. Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff Diana Suttles (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

### INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), 15 U.S.C. §1681i(a)(5)(A)), and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with her inaccurate, misleading, or

incomplete reporting of Plaintiff's account with T.D. Bank, N.A. (hereinafter "TDB")

3. Here, TDB continues to report inaccurate and incomplete information regarding Plaintiff's account.

4. Specifically, TDB recklessly reported that Plaintiff's account was included and discharged in bankruptcy despite Plaintiff not including/discharging the account and continuing to maintain timely payments on the account.

5. In addition, even after Plaintiff disputed TDB's reckless reporting TDB failed to update or otherwise correct its reporting and continued to indicate that the account was closed and included/discharged in bankruptcy rather than open and current.

6. Such reporting is misleading and adversely impacts Plaintiff's credit worthiness.

7. Plaintiff's credit reports have been disseminated to third parties.

8. Plaintiff's credit has also been damaged as a result of the inaccurate and misleading reporting.

9. Plaintiff has been denied various unsecured credit cards as a result of the TDB account tradeline.

10. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

11. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

//

## JURISDICTION & VENUE

12. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

13. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

14. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

15. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

16. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

17. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

18. In the alternative Plaintiff alleges that each and every Defendants action were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

19. FICO is a leading analytics software company with its principal headquarters located in San Jose California.  FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

20. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

21. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

22. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

23. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

24. There are 28 FICO Scores that are commonly used by lenders.

25. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

26. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

27. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

28. There are five key factors that a FICO Score considers: 1) Payment History, 2) Amount of Debt, 3) Length of Credit History 4) New Credit and 5) Credit Mix.

29. Each of the five factors is weighted differently by FICO.

30. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

31. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO

Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

32. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

33. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

34. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

### e-OSCAR

35. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

36. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

37. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Metro 2

38. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

39. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a

debt.  Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

40. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

41. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

42. The CDIA is *the* expert on accurate credit reporting.  In support of her allegations Plaintiff avers the following:

    a.  The CDIA offers a FCRA certificate program for all CRAs.

    b.  The CDIA offers a FCRA awareness program for all CRAs.

    c.  The CDIA offers a FCRA Certificate program for DFs.

    d.  The CDIA offers a FCRA awareness program for DFs.

    e.  The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f.  The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g.  The CDIA developed a credit reporting resource guide for accurately reporting credit.

43. The CDIA's Metro 2 is accepted by all CRAs.

44. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

45. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

46. The three main credit bureaus helped draft the CRRG.

47. The CRRG is not readily available to the public.  It can be purchased online for $229.45.

48. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

49. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

50. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

51. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results.  If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

52. All three major CRAs are members of the CDIA

### Plaintiff's Dispute

53. On November 1, 2022 Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure proper reporting by Plaintiff's in response to a drop in her credit score.

54. Plaintiff noticed various delinquent and adverse trade lines on her November 1, 2022 credit report, such as TDB was not reporting complete and account information regarding her account.

55. Specifically, TDB was reporting that Plaintiff's account was closed and included/discharged in bankruptcy rather than open and current.

56. In response to her initial review, Plaintiff disputed the TDB tradeline with Experian, Equifax, and TransUnion via certified mail in November of 2022.

57. Plaintiff's dispute letters specifically put the Defendants on notice that the accounts should not be listed as discharged, included in bankruptcy, and

making payments under a wage earner plan as the account was not included, discharged, or subject to a bankruptcy.

58. Plaintiff's dispute letter specifically stated that the TDB account should be reflecting her timely payments to TDB.

59. To support her dispute Plaintiff included her payment history and statements showing the TDB account was open and current.

60. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to TDB via an ACDV through e-OSCAR.

61. On January 1, 2023 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the credit Bureaus, Plaintiff ordered a second credit report from Experian, Equifax, and TransUnion for the sole purpose to ensure Plaintiff's account with TDB had in fact been updated.

**Inaccuracy –TDB**

62. Plaintiff was frustrated to see that Defendant TDB did not properly update the account.

63. TDB failed to account for ANY timely payments Plaintiff made on the account, this despite Plaintiff including in her dispute proof of timely payments.

64. In addition, TDB continued to list the account as closed and included/discharged in bankruptcy despite the account being open and current.

65. Plaintiff did not include/discharge the TDB account in any bankruptcy proceeding and instead continued to make timely payments on the account after charges were made.

66. Such reporting makes it appear as if Plaintiff is not making timely payments on her TDB account.

67. Such reporting is inaccurate given that Plaintiff is and always has maintained timely payments on the account.

### Willfulness

68. This was not a negligent act by Defendant TDB but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore her credit.

69. TDB's reporting makes Plaintiff appear less credit worthy because anything other than a timely payment on an account is reviewed as a credit risk.

70. Here, Plaintiff made timely account payments and those payments have not been reflected.

71. TDB knows that its reporting must be accurate and complete.

72. TDB, with knowledge of Plaintiff dispute, chose NOT to update Plaintiff's credit report and instead still reported that Plaintiff had not made timely payments on the account.

73. Such a scheme directly undermines the integrity of the credit reporting system at large.

### Damages

74. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

75. TDB's inaccurate reporting has been transmitted to third parties since Plaintiff completed her Chapter 13 case and negatively impacted Plaintiff's ability to obtain and rebuild her credit.

76. TDB's reporting has diminished Plaintiff's credit score.

77. The actions of Experian, TransUnion, and TDB as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION**

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants Experian and TransUnion)

**Experian Information Solutions, Inc.; TransUnion, LLC – Failure to Assure Credit Reporting Accuracy.**

78. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

79. Experian and TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

80. Had Experian and TransUnion maintained reasonable procedures to assure maximum accuracy Experian and TransUnion would never have allowed Defendant TDB to report the account as described herein.

81. TDB is not reporting timely payments despite both TDB and the CRAS being given proof of timely payments.

82. Even assuming the CRAs are not sophisticated enough to address this obvious contradiction, Plaintiff disputed the account and the CRAs still did not fix the issue.

83. Plaintiffs informed Experian and TransUnion that the information reported by TDB was incorrect because Plaintiff provided verification that TDB was receiving timely payments.

84. The verification provided by Plaintiff came directly from TDB.

85. Instead, the account remains inaccurate.

86. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

87. The violations described herein by Experian and TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

88. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

89. Such a finding should shock the conscience.

90. When those errors are disputed Experian and TransUnion intentionally send consumer disputes to employees who do not live within the continental United States.

91. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

92. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendants Experian and TransUnion receive little to no training concerning how to accurately report consumer debt.

93. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F. Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

94. Experian and TransUnion employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

95. Experian and TransUnion have intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

96. Experian and TransUnion also allowed TDB to report the account with inaccurate information despite specifically being told in the dispute letter why the information TDB was reporting was incorrect.

97. Experian and TransUnion are members of the consumer data industry association.

98. Consequently, Defendants Experian and TransUnion are liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

99. In the alternative, Experian and TransUnion were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

100. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against All Defendants)

**TDB – Failure to Reinvestigate.**

101. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

102. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

103. Defendant TDB violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

104. The CRAs provided notice to TDB that Plaintiff was disputing the inaccurate and misleading information, but TDB both failed to conduct a reasonable investigation of the information as required by the FCRA.

105. Based on Plaintiff's dispute, TDB should have known that its reporting was incomplete as Plaintiff's dispute letters highlighted the problems with the tradeline.

106. The most basic investigation would simply involve reading Plaintiff's dispute letters.

107. Plaintiff alleges TDB did not review well established industry standards for credit reporting.

108. If TDB had reviewed such standards, both would have seen its reporting was not in compliance and in accordance with the CRRG and consequently inaccurate and or incomplete.

109. Moreover, had TDB done any investigation whatsoever it would have uncovered that its reporting was entirely inaccurate given Plaintiff's years of timely payments not being reported.

110. The lack of investigation is unreasonable.

111. Plaintiff further alleges that TDB has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian and TransUnion – Failure to Reinvestigate Disputed Information.**

112. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

113. After Plaintiff disputed the account mentioned above, Experian and TransUnion were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

114. Experian and TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

115. Experian and TransUnion could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly provided information regarding payment of the loans verifying that the accounts were open and current.

116. Plaintiff alleges that Experian and TransUnion both have its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.

117. Experian and TransUnion are not passive entities bound to report whatever information a DF provides.

118. Given the aforementioned, Plaintiff allege that Experian and TransUnion can and do suppress inaccurate information from being reported when DFs provide inaccurate information.

119. Experian and TransUnion can and do instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

120. Experian and TransUnion failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

121. Experian and TransUnion therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

122. Experian and TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian and TransUnion, general policy is to simply parrot whatever information a data furnisher sends.

123. Such policies and procedures inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Review and Consider All Relevant Information.**

124. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

125. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

126. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

127. The violations by Experian and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

128. In the alternative Experian and TransUnion were negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

129. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian and TransUnion)

**Experian and TransUnion, – Failure to Delete Disputed and Inaccurate Information.**

130. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

131. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

132. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

133. The violations by Experian and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

134. In the alternative, Experian and TransUnion were negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

135. Plaintiff are entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## <u>FIFTH CAUSE OF ACTION</u>
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendant TDB)

**TDB – Reporting Inaccurate Information to CRAs.**

136. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

137. In the regular course of its business operations, TDB routinely furnishes information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

138. TDB is intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not follow with well-established industry standards.

139. Plaintiff alleges that TDB re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

140. Plaintiff also alleges that TDB all had reason to know that the information reported on Plaintiff's account was misleading, inaccurate, and incomplete.

141. Plaintiff alleges that TDB both had reason to know that by not complying with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

142. Plaintiff alleges that the dispute letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to TDB of its misleading and inaccurate reporting.

143. TDB failed to notify Experian and TransUnion that the information Defendant TDB re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

144. TDB's communications of false information, and repeated failures to investigate, and correct its inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

145. As a direct and proximate result of TDB's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, denial of credit, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues triable by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;

3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31

4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;

5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**Gale, Angelo, Johnson, & Pruett, P.C.**

Dated:        February 17, 2023                    */s/ Joe Angelo*
                                                        Joe Angelo
                                                        Attorneys for Plaintiff